Monell, J. (dissenting.).
The only question upon which I differ with my brethren is, whether the evidence of the handwriting of the defendant, Osborn, to the bond in suit, was sufficient to go to the jury.
Mr. Parsons testified that he had seen Osborn’s handwriting on several occasions ; that Osborn was at his office and executed one or more papers on several occasions, in behalf of Baylor, in several matters, and his recollection was that he saw him execute several papers. “ Q. Did you know the handwriting P A. I thought I did. Q. Do you say now that you did ? A. I think I did know the handwriting of Osborn. Q. You recognized that bond as being signed by him, and by Calrow and Baylor ? A. Yes sir, and by Baylor.” The witness further testified : “ That was my best recollection, that I have seen Osborn write in my office, on one or more occasions, when, he came to execute papers, and I became acquainted to that extent with his signature at that time, and recognized this at the time as a genuine instrument.” Upon his cross-examination, Mr. Parsons testified that he had no recollection how often he had seen Osborn write ; that he could not positively say.that he had seen him write three times. “ Q. Can you say now that you know his handwriting ? A. I think I should know his handwriting if I saw it. Q. Could you tell it from a tolerable imitation ? A. I am not expert in signatures ; if there was a good imitation I should call it his, and so of any *696 body’s else. Q. Are you sufficiently familiar with his hand^ writing to discriminate between a genuine and a tolerably good imitation of the signature ? A. No sir, I do not know that I am.”
The law imposes no other duty upon parties than to give the best evidence in their power. Having done this, its sufficiency, in a large majority of cases, is to be determined by the jury. The strongest possible proof of the matter in question is not required, but it must be seen that no evidence is received, which from its nature supposes still greater evidence behind in the party’s possession or power.
A witness may not testify to the genuineness of a signature, who has never seen the party write, except he be an expert who testifies from mere comparison. All evidence of handwriting, except when the witness saw the document written, is in its nature comparison. It is the belief which the witness entertains, upon comparing the writing in question, with, its exemplar in his mind, derived from some previous knowledge. If the witness has any knowledge of the party’s handwriting, he may declare his belief in regard to the genuineness of the writing ; and the only difference among judges, has been upon the source from which the knowledge is derived, rather than as to the degree or extent of it. Mr. Philips says, (1 Phil. Ev. 484,) evidence of handwriting admits of every possible degree, from the lowest presumption to the highest moral certainty. It may be so weak as to be utterly unsafe to act upon, or so strong, as in the mind of any reasonable man to produce conviction. But whatever degree of weight the testimony may deserve, which is a question exclusively for the jury, it is an established rule, that if the witness has seen the person write, he will be competent to speak to his handwriting.”
Mr. Parsons testified that he had seen Osborn write on several occasions. He was thus qualified to declare his belief as to the genuineness of his signature to the bond in question, and he did declare it, by saying that he recognized Osborn’s signature to the bond. However weak this evidence may have been, *697 it was competent to go to the jury, and their determination of it will not he disturbed by the court.
One of the earliest and a leading English case is Garrels v. Alexander, (4 Esp. 37.) The action was assumpsit on a bill of exchange. To prov'e the handwriting, the plaintiff called a, clerk of the defendant’s attorney. He said he had seen the defendant sign the bail bond in the cause, but had never seen him write on any other occasion. Being asked whether he believed the acceptance to be in the hand-writing of the defendant, he said he could form no belief on the subject/ it was like the handwriting in which the bail bond was subscribed, but that he could not speak to any belief further than he had already done. Lord Kenyon considered the evidence sufficient to go to the jury. He says, “ The witness has seen the defendant write, and he speaks to the likeness which the handwriting in which the bill is accepted bears to that which he has seen the defendant actually write,”
In Lewis v. Sapio, (1 Moody & M. 39,) the witness said he had seen the defendant write his name several times, but always “Mr. Sapio,” and had never seen any other writing by him. Abbott, Ld. Oh. J. held it sufficient.
In Powell v. Ford, (2 Starkie, 164,) the witness said he had seen the defendant write once, when he executed a bail bond ; that he had compared the handwriting upon the bill with that upon the. bail bond, and believed the former to have been written by the defendant. He also stated that from having seen the defendant execute the bail bond, he believed the accceptance was in his handwriting, but that when the defendant signed the bail bond, he did not write his name at length, but only “ Mr. Ford.” Lord Ellenborough held the proof sufficient. He said “ if the witness had seen the defendant write his full name, although but once, it would have been sufficient.”
In this country the courts have all followed the English cases.
In Hartung v. People, (4 Park, C. R. 319,) a letter supposed to have been written by the prisoner, was given in evidence. The witness, to prove the handwriting, said she had *698 seen the prisoner write,- and expressed her opinion that she would know her handwriting, and that the letter was in her handwriting. The court say, “ There is no precise standard fixing the degree of knowledge which a witness must possess of a person’s handwriting, to be allowed to express an opinion as to the authenticity of a particular paper. The witness must have seen the party write, and acquired a knowledge, more or less perfect, of the character of the hand, and he is then allowed to express an opinion upon the paper shown.”
In Hopkins v. Megguire, (35 Maine Rep. 78,) the witness said he had seen the party write five or six times, and that it was his strong impression that the indorsement was in his handwriting ; that it looked like it, but that he could not swear to the indorsement, nor to his writing. " This was held sufficient to go to the jury. The court say, “All that a witness can be expected to testify is that the handwriting resembles that of the person whose it purports to be. The strength of his belief will depend on the greater or less degree of similarity. He can only testify to his own state of mind.” -
In Burnham v. Ayres, (36 N. H. Rep. 182,) the witness said he had seen, the defendant write; could not say that he could tell it; used to have some recollection of'his hand; could not say he could form any opinion of his hand, but rather thought he could. This was deemed sufficient. The court say, “If a witness has any knowledge of the handwriting, which has been derived from seeing the person write, though it be but once, he may give his opinion as to the genuineness of the signature or writing in dispute.” And
In Shilter v. Bremer, (23 Penn. R. 413,) Knox, J. says, “The evidence given to prove that the letter was in the handwriting of the defendant, was very slight. One witness said, ‘It looks like it; it resembles it; can not say I ■ believe it to be his handwriting, for there is a possibility of mistake ; there is a general resemblance.’ Another said, ‘ There is a slight resemblance in some of the letters.’ We can’t say that it was error in the court to submit this evidence to the jury.”
In all the cases, to which I have referred, the evidence to *699 prove the handwriting was far weaker than in the case now before us. Here the witness had seen the defendant write on several occasions, and says, that in that way and to that extent he became acquainted with his signature, and then he expresses the belief that the bond was a genuine instrument.
At the close of the evidence, the defendant’s counsel moved to dismiss the complaint, on the ground that there was not sufficient proof to go to the jury that the bond was executed. The motion was overruled, and the question of the execution of the bond by the defendant was submitted to the jury.
I think it was properly submitted; and upon well settled principles governing evidence of this character, as well as upon a' long line of uniform adjudication, it would have been error to have excluded it from "their consideration.
No motion having been made at special term for a new trial on the ground that the verdict is against the weight of evidence, I am not at liberty to consider that question.
I arh of opinion that the judgment should be affirmed.
Judgment reversed.